UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HAPPY HEALTHCARE, S.A. de C.V. | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| ONLINE TRANSPORT INTL, LLC, TAYLOR BIO ARMOR, LLC, JOSEPH LASSEN, ENRIQUE G. SERNA, and SERNA & ASSOCIATES, PLLC | § § § § § § § | Civil Action No. 5:20-cv-1038 |
| *Defendants.* | | |

### COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Happy Healthcare, S.A. de C.V. ("**Happy Healthcare**") files this Complaint against Defendants Online Transport Intl, LLC ("**OTI**"), Taylor Bio Armor, LLC ("**Taylor Bio Armor**"), Joseph Lassen ("**Lassen**"), Enrique G. Serna ("**Serna**"), and Serna & Associates, PLLC ("**Serna & Associates**") (collectively, the "**Defendants**"), and respectfully states the following:

### I.    INTRODUCTION

1.    In the midst of the pandemic, the need for personal protective equipment and face masks has never been more pronounced.  So, when Enrique Serna approached Happy Healthcare about a business venture involving the sale of millions of masks to the Texas Division of Emergency Management ("TDEM"), Happy Healthcare was all-in.

2.    Based in Mexico, Happy Healthcare trusted Serna as Serna was a lawyer who had represented the company's affiliates in the United States.  Serna touted his strong connections with Texas government officials and he later vouched for OTI, Taylor Bio Armor and their Vice-President Joseph Lassen.  For Serna's loyal services, Happy Healthcare agreed to pay him a significant portion of Happy Healthcare's anticipated profits.

3. What Happy Healthcare did not know – and what Serna failed to disclose – was that Serna was playing both sides. In addition to sharing in Happy Healthcare's profits, Serna was getting paid by OTI and actually held a partnership interest in the company's protective mask venture. What Happy Healthcare did not know - and could not have known - was that Serna, OTI, Taylor Bio Armor, and Lassen would later conspire to keep millions of dollars of sales proceeds received from TDEM that rightfully belonged to Happy Healthcare.

4. The Defendants' duplicity became clear only after the final sales transaction, when they failed to pay Happy Healthcare for over $3 million worth of masks. The Defendants then embarked on a shameful course of delay, lies, and fraud in an effort to prevent Happy Healthcare from discovering the truth.

## II.  PARTIES

5. Plaintiff Happy Healthcare, S.A. de C.V. is a Mexican company with its principal place of business in San Pedro Garza Garcia, Nuevo Leon, Mexico.

6. Defendant Online Transport Intl, LLC is a Florida limited liability company with its principal place of business at 1717 5th Ave, Tampa, Florida, 33605. Upon information and belief, all of OTI's members are either Florida or Texas citizens. OTI may be served with process by service upon its registered agent Joseph Lassen at 24203 Gazania Bluff, San Antonio, Texas, 78260, or wherever he may be found.

7. Defendant Taylor Bio Armor, LLC is a Texas limited liability company with its principal place of business as 18911 Hardy Oak Blvd., Suite 239, San Antonio, Texas 78258. Upon information and belief, all of Taylor Bio Armor's members are either Florida or Texas citizens. Taylor Bio Armor may be served with process by service upon its registered agent, Joseph Lassen at 18911 Hardy Oak Blvd., Suite 239, San Antonio, Texas 78258, or wherever he may be found.

8. Defendant Joseph Lassen is a Texas citizen residing in San Antonio, Texas. Lassen may be served at his residence at 24203 Gazania Bluff, San Antonio, Texas 78260, or wherever he may be found. Lassen holds executive officer positions in OTI and Taylor Bio Armor and, at all relevant times, held himself out as an agent for the two companies.

9. Defendant Enrique G. Serna is a Texas citizen residing in San Antonio Texas. Serna may be served at his business address at 10999 IH-10 West, Suite 305, San Antonio, Texas 78230, or wherever he may be found.

10. Defendant Serna & Associates, PLLC is a Texas professional limited liability company with its principal place of business at 10999 IH-10 West, Suite 305, San Antonio, Texas 78230, and may be served with process by service upon its registered agent Enrique G. Serna at that same address, or wherever he may be found.

### III.   JURISDICTION

11. Jurisdiction is proper under 28 U.S.C. §1332(a)(2), because, as set forth above, Plaintiff is a citizen of a foreign state and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interests and costs.

### IV.   VENUE

12. Venue is proper in this Division under 28 U.S.C. §1391(b)(2), where a substantial part of the events or omissions giving rise to the claims occurred and where Defendants Serna and Lassen reside.

### V.   FACTUAL BACKGROUND

13. Based in Monterrey, Mexico, Happy Healthcare distributes high-quality pharmaceuticals, personal protective equipment, and other medical products.

14. One of the principals of Happy Healthcare first retained Serna and his San Antonio-based law firm, Serna & Associates, PLLC in 2018. Over time, as their attorney and agent, Serna

3

cultivated a close fiduciary relationship with them.  At all times relevant to this Complaint, Serna acted individually, on behalf of, and by and through Serna & Associates (Serna and Serna & Associates are collectively referred to as "Serna" unless otherwise indicated).

15. On or about March of 2020, Serna approached the principals of Happy Healthcare regarding an opportunity to sell large quantities of protective face masks to the State of Texas.

16. Serna represented that he had been negotiating with the Texas Division of Emergency Management ("TDEM" or the "State") to sell millions of masks. Serna needed to secure a source for the masks and turned to Happy Healthcare, which he knew was an established healthcare product company.

17. Happy Healthcare agreed to locate and purchase the masks.  In total, there were five sales transactions.

18. For the first shipment of 1 million masks, Serna represented that he was selling the masks to TDEM at a price of approximately $.55 per mask.  Happy Healthcare's cost to acquire the masks was approximately $.33 per mask.  Based on Serna's representation about what the State was paying for the masks, and at Serna's request, Happy Healthcare agreed to a 50/50 split of the profit (*i.e.,* the 22-cent margin) with him.

19. However, Serna's representations were false in several material ways.  First, Serna concealed the true nature of the transaction.  The truth was that it was not Serna that was selling the masks to the State but rather a group of affiliated companies, including Online Transport Intl and Taylor Bio Armor (OTI and Taylor Bio Armor are sometimes referred to collectively as the "**OTI Entities**"). Defendant Joseph Lassen was an officer of the OTI Entities.  Unbeknownst to Happy Healthcare, the true price being paid by TDEM for the first shipment of one million masks was actually $1.25 per mask – more than twice what Serna represented to Happy Healthcare.

20. For the first three mask orders, Serna & Associates would be invoiced by Happy Healthcare only for the cost of the masks. Happy Healthcare would then ship the masks to TDEM warehouses in Texas. In turn, Serna was supposed to invoice TDEM, adding what he represented to be the agreed margin. Upon receipt of payment from TDEM, Serna was supposed to split the profits with Happy Healthcare.

21. These representations were also false. In reality, OTI – not Serna - was invoicing TDEM for these first three shipments, and at a much higher sales price than what was represented to Happy Healthcare.

22. At no time during this process did Serna reveal to Happy Healthcare that: (1) Serna was actually a partner with the OTI Entities; (2) that TDEM was paying almost double what Serna had represented; or that (3) Serna was also getting paid from the OTI side of the transaction. Had Serna told the truth, Happy Healthcare may not have entered into the transaction at all and certainly would have negotiated a different compensation structure.

23. These first three orders were filled on a pay-in-advance basis. In other words, Serna & Associates paid Happy Healthcare the cost of the masks prior to the masks being delivered.

24. After the first three shipments, Serna approached Happy Healthcare and convinced the company to ship a fourth order of masks on a credit basis. Trusting Serna, Happy Healthcare shipped approximately 1,010,700 masks to the TDEM warehouse. Serna & Associates agreed to pay Happy Healthcare approximately $475,207.31 for this fourth order within thirty days of shipment, which again represented Happy Healthcare's costs incurred in acquiring the masks. As with the first three orders, Serna agreed that once he received payment from TDEM, Happy Healthcare would receive its portion of the profit. Like with the first three shipments, Serna did not disclose that it was actually OTI selling the masks to TDEM and that the true sales price was

substantially higher. Even though this order was filled in April of 2020, Happy Healthcare has received no payment.

25. After the fourth order was shipped, Serna informed Happy Healthcare that he wanted to purchase an additional 5 million masks for three million dollars ($3,000,000), an amount this time that included both Happy Healthcare's cost of acquiring the masks ($2,100,000) as well as the profit ($900,000).

26. To convince Happy Healthcare to fill such a large purchase order on credit, Serna represented to Happy Healthcare that the OTI Entities would be responsible for paying the purchase order within 30 days of delivery. For this fifth shipment, Serna acted as Happy Healthcare's intermediary and also held himself out as an agent of the OTI Entities. Again, Serna misrepresented to Happy Healthcare the true sales price to TDEM. Instead of $3,000,000, OTI invoiced the State a total of $6,225,000 for this shipment.

27. Still trusting Serna, Happy Healthcare purchased the 5 million masks, shipped the masks directly to the TDEM warehouse in San Antonio, and issued an invoice (at Serna's request) to Taylor Bio Armor in the amount of $3,000,000. The masks were delivered on or about June 5 and June 6, 2020.

28. Upon information and belief, TDEM paid OTI approximately $2,920,375 towards this fifth shipment shortly after the masks were delivered. As explained herein, all defendants concealed this critical fact from Happy Healthcare.

29. Under the agreement between Serna, the OTI Entities and Happy Healthcare, payment on the invoice for the fifth purchase order was due 30 days after delivery of the fifth shipment of masks.

30. In violation of their contractual obligations, Serna and the OTI Entities failed to make the required payment and to date have still made no payments to Happy Healthcare for this fifth order.

31. On several occasions, including an August 6, 2020 letter, Happy Healthcare notified Defendants of the breaches and made formal demand for payment.

32. The OTI Entities and Serna have conceded they breached their contractual obligation. However, they falsely represented that the reason for their breach was that TDEM had not paid OTI for the last order. In any event, Happy Healthcare was not a party to the agreement between OTI and TDEM. Moreover, the Defendants' payment obligations were not conditioned on OTI's receipt of payment from TDEM.

33. Therefore, in August 2020, Happy Healthcare continued to pursue Defendants for payment.

34. During this time, OTI, Taylor Bio Armor, Lassen, and Serna each repeatedly and falsely represented to Happy Healthcare that TDEM had made no payments to OTI for the last order. These representations included, without limitation:

35. On August 12, 2020, OTI and Taylor Bio Armor by and through Lassen falsely represented in an e-mail that OTI had not yet been paid by TDEM and "this whole ordeal from the State of Texas took us by complete surprise." The truth is that TDEM had already paid OTI almost $3 million for the fifth shipment of masks.

36. In another August 12, 2020 e-mail, Lassen again misrepresented that the State had not paid OTI but assured Happy Healthcare that "Once the State of Texas pays us, you [Happy Healthcare] keep all the statutory interest owed by the State of Texas." The truth is that the State of Texas had paid OTI a substantial portion towards the fifth order.

7

37. Later that same day, in another e-mail Lassen promised to pay Happy Healthcare something to appease them, falsely claiming that "I had to scramble to get this amount, if I had additional cash I would have sent it to you." The truth is that OTI did have "additional cash" as it had received the approximately $3 million payment from the State.

38. Serna was also aware that the payment had been made to OTI by TDEM but still did not reveal that information to Happy Healthcare. Instead, in multiple calls with Happy Healthcare and its Mexico counsel, Serna perpetuated the fraud and assisted the OTI Entities and Lassen in the concealment.

39. Happy Healthcare only discovered through Serna's recent confessions that TDEM had already paid OTI $2,920,375 towards the last order. The Defendants concealed this information and affirmatively represented the opposite – that OTI had received no payments on the last order. Serna concealed this information despite, and in violation of, the fiduciary duty of loyalty and absolute candor owed to Happy Healthcare.

40. All of the above representations were further made with the specific intent to delay and deceive Happy Healthcare. Happy Healthcare relied on these representations to its detriment by, among other things, delaying in bringing this legal action to secure payment.

41. Happy Healthcare was also materially damaged by these fraudulent actions as OTI has, upon information and belief, transferred and dissipated its assets to put them out of reach of Happy Healthcare.

42. As one example of the scheme to delay, conceal, and defraud Happy Healthcare, OTI transferred a substantial sum to Serna as a "loan". After the fraud was discovered, Serna confessed to Happy Healthcare's Mexico counsel that OTI had given Serna a "loan" to keep him quiet yet Serna has not returned the funds nor, as a "partner" of the OTI Entities, ensured that those funds be paid to Happy Healthcare.

## VI.  CAUSES OF ACTION

43. Pursuant to Federal Rule of Civil Procedure 8(d), Happy Healthcare asserts the following claims individually, additionally, alternatively, and/or hypothetically as permitted by law.

### COUNT ONE – Breach of Contract
### (Defendants OTI Entities, Serna, Serna & Associates)

44. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

45. Happy Healthcare, Serna, and the OTI Entities agreed on the terms for the sale for five shipments of protective face masks as described herein.

### Shipment Nos. 1-4 (Serna and Serna & Associates)

46. Serna and Serna & Associates agreed to purchase protective face masks from Happy Healthcare. Happy Healthcare shipped and delivered the orders as described herein. Invoices reflecting the terms of the sale were issued to Serna & Associates. The invoice for the Fourth shipment was in the amount of $475,207.31, which remains unpaid. The profits on shipment nos. 1-4 also remain unpaid and are due and owing to Happy Healthcare.

### Shipment No. 5 (Serna, Serna & Associates, The OTI Entities)

47. As instructed by the OTI Entities and Serna, Happy Healthcare delivered the fifth shipment of masks to the TDEM warehouse in San Antonio and issued corresponding invoices to both OTI and Taylor Bio Armor in the amount of $3,000,000.00. OTI was the direct beneficiary of the shipment, and OTI, Happy Healthcare, and Taylor Bio Armor all agreed that the OTI Entities and Serna would be responsible for paying Happy Healthcare.

48. Serna and the OTI Entities made an offer to purchase the masks for prompt shipment. Happy Healthcare accepted the offer both by verbally accepting the terms as well as by shipping the masks.

49. The masks were accepted by: (i) signaling to Happy Healthcare that the masks were conforming to the parties' agreement; and (ii) not rejecting the masks. The masks complied with and conformed to the parties' agreements.

50. The named defendants are obligated to pay for the masks in accordance with their agreement.

51. As described above, the named defendants failed to pay the agreed upon price of the fourth and fifth orders of masks despite accepting those shipments. In addition, and pursuant to the Parties' agreement, Happy Healthcare is further entitled to its anticipated profits related to all the mask sales.

### COUNT TWO – Quantum Meruit
### (Against OTI Entities, Serna, Serna & Associates)

52. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

53. Happy Healthcare provided valuable services or materials to the named Defendants for Defendants' benefit, namely, by providing shipments of protective face masks as described herein. Defendants accepted the masks and had reasonable notice that Happy Healthcare expected compensation for the masks in the form of payment not only for Happy Healthcare's costs of purchasing the masks, but also a share of the profits received.

54. Happy Healthcare is therefore entitled to recover from Defendants the amounts set forth herein.

### COUNT THREE – Restitution/Unjust Enrichment
### (Against All Defendants)

55. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

56. Defendants obtained a benefit from Happy Healthcare by accepting and re-selling

the five orders of masks. Defendants obtained this benefit from Happy Healthcare by fraud, duress, or taking undue advantage of Happy Healthcare, namely, by (i) misrepresenting to Happy Healthcare that they had received no payments from TDEM for the last order, (ii) wrongfully concealing the nature of Serna's relationship with the OTI Entities including without limitation Serna's payment arrangement with OTI, his interest in the OTI Entities, and the fact that he had received a substantial loan from OTI at the same time Defendants represented to Happy Healthcare that OTI had not yet received payment from TDEM; and (iii) misrepresenting the price the masks were being sold to TDEM and how much Serna and the OTI Entities had received for the orders. Defendants' retention of the benefits received by virtue of Happy Healthcare's mask shipments is unjust under the principles of equity. It would be unconscionable for Defendants to retain the benefit received from Happy Healthcare.

57. Happy Healthcare is therefore entitled to recover from Defendants the amounts set forth herein.

## COUNT FOUR – Breach of Fiduciary Duty
**(Defendants Serna, and Serna & Associates )**

58. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

59. As Happy Healthcare's attorney and agent, Defendant Serna and Serna & Associates ("Serna") owed a fiduciary duty to Happy Healthcare. These duties included duties of loyalty, good faith, candor, fair and honest dealing.

60. Serna breached those duties, among other ways, by: (1) failing to disclose the pecuniary interest in the OTI Entities; (2) failing to disclose the arrangement to obtain financial compensation from the OTI Entities in relation to the mask transactions; (3) falsely representing the sales price to TDEM and the true profit derived from such sales; (4) falsely representing that OTI had not received any payments from TDEM; (5) agreeing with OTI to receive a covert,

substantial "loan" from funds received from TDEM; and (6) failing to disclose that he had received the "loan" while at the same time representing that OTI had received no payments from TDEM for the last two orders.

61. These breaches and others resulted in damages as described herein.

62. In addition, Serna should be forced to disgorge to Happy Healthcare all compensation and other benefits he received directly or indirectly from Happy Health Care, the OTI Entities, and TDEM in connection with the mask transactions, including but not limited to all payments received from Happy Healthcare, all payments and "loans" received from OTI, and the value of any equity in the OTI Entities or its affiliates Serna received in connection with these transactions. Disgorgement is justified given the egregious breaches described herein and to prevent Serna from being unjustly enriched by his conduct.

63. Happy Healthcare is also entitled to exemplary damages, as set forth herein.

### COUNT FIVE - Aiding and Abetting Breach of Fiduciary Duty
(Defendants OTI Entities and Lassen)

64. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

65. As explained herein, Serna breached fiduciary duties owed to Happy Healthcare including duties of loyalty, good faith, candor, fair and honest dealing.

66. Defendants OTI Entities and Lassen knew of Serna's breach of fiduciary duties. By participating in the conduct giving rise to those breaches and concealing the breaches, Defendants OTI Entities and Lassen intended to and did assist or encourage Serna in his breach of fiduciary duty.

67. Each Defendant's actions as described herein was a substantial factor in causing the breach of fiduciary duty which resulted in damages to Happy Healthcare for which it is entitled

to recover damages. As a result, Defendants are jointly and severally liable for all the damages resulting from the tortious conduct.

68. Happy Healthcare is also entitled to recover exemplary damages as set forth herein.

## COUNT SIX - Fraud
### (All Defendants)

69. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

70. As set forth herein, Defendants misrepresented to Happy Healthcare that they had received no payments from TDEM for the last order. These misrepresentations were material as they related to Defendants' ability to pay their obligations to Happy Healthcare. These representations were false. Defendants knew they were false or made them recklessly, as a positive assertion and without knowledge of their truth. Defendants made these representations with the intent that Happy Healthcare rely upon them – primarily by foregoing taking legal action which would have prevented the waste and dissipation of the OTI Entities' assets. Happy Healthcare did rely upon the misrepresentations and the misrepresentations caused injury in that assets, including the "loan" to Serna, were wrongfully removed prior to Happy Healthcare being able to take legal action to prevent such harm.

71. Serna further committed fraud, among other ways, by wrongfully concealing the nature of his relationship with the OTI Entities including without limitation his payment arrangement with OTI, his interest in the OTI Entities, and the fact that he had received a substantial loan from OTI at the same time he represented to Happy Healthcare that OTI had not yet received payment from TDEM. Serna also fraudulently represented the price the masks were being sold to TDEM and how much Serna and the OTI Entities had received for the orders. As Happy Healthcare's attorney and agent, Serna owed duties, including loyalty and candor, and his actions breached those duties and others to the detriment of Happy Healthcare.

13

72. As a result, Defendants are jointly and severally liable for all of the damages resulting from the tortious conduct.

### COUNT SEVEN - Conspiracy
### (Against All Defendants)

73. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

74. As more fully set forth herein, all Defendants were part of a conspiracy which had as its objects: (1) the wrongful retention of monies due and owing to Happy Healthcare; (2) fraud; (3) breach of fiduciary duty; and (4) unlawful transfer and dissipation of assets due and owing to Happy Healthcare.

75. All Defendants knew of each other's conduct as described herein. All Defendants knowingly, willingly, and enthusiastically participated in the false representations and breaches of fiduciary duty.

76. Defendants' actions in furtherance of the conspiracy have caused damages to Happy Healthcare for which Defendants are jointly and severally liable.

### COUNT EIGHT:  Violations of the Texas Uniform Fraudulent Transfer Act
### (Against all Defendants)

77. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

78. Happy Healthcare brings this claim pursuant to the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code § 24.001 et seq. ("**TUFTA**"), as Defendants' transfers of assets from OTI constitute a fraudulent transfer under TUFTA.

79. Happy Healthcare is a "creditor" within the meaning of TUFTA because it is filing this TUFTA claim based upon a right to payment. Tex. Bus. & Com. Code § 24.002(3). Defendants "debtors" within the meaning of TUFTA.  Defendants Lassen and Serna are also each a

"transferee" within the meaning of TUFTA as, upon information and belief, each received funds or other assets of the other Defendants as described above. Tex. Bus. & Com. Code § 24.009(b).

80. Defendants all falsely represented to Happy Healthcare that OTI had received no payments from TDEM for the last order – while knowing that representation to be false.

81. Defendants were all involved in a "transfer" of funds within the meaning of TUFTA when, among other things, they participated in the "loan" to Serna and otherwise dissipated assets from OTI to the detriment of Happy Healthcare. The Defendants made this transfer at a time they were not paying their debts to Happy Healthcare.

82. Defendants made these transfers with actual intent to hinder, delay and defraud Happy Healthcare. Alternatively, Defendants made these transfers without receiving equivalent value and at a time when they had already incurred, intended to incur, or reasonably believed they would incur, debts beyond their ability to pay. Upon information and belief, although it was undisclosed to Happy Healthcare, Serna was a partner in the OTI Entities and thus was an "insider" when receiving the "loan" and any other payments from OTI.

83. Pursuant to Tex. Bus. & Com. Code § 24.008, Happy Healthcare seeks, among other relief: (a) avoidance of the transfers, including without limitation, the "loan" to Serna; (b) an attachment against the funds transferred or other property of the TUFTA Defendants; (c) an injunction against further disposition by the TUFTA Defendants; and/or (d) a levy for execution on the transferred assets.

**COUNT NINE - Conspiracy to Violate the Texas Uniform Fraudulent Transfer Act**
**(Against all Defendants)**

84. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

85. Defendants conspired to defraud Happy Healthcare through their fraudulent actions as described herein.

86. Defendants had a meeting of the minds regarding their fraudulent scheme, which is evidenced by their participation in the same.

87. Defendants' agreement to defraud Happy Healthcare proximately caused injury in the amount owed to Happy Healthcare and the loss of use of the funds.

88. As a result, Defendants are jointly and severally liable for all of the damages resulting from the tortious conduct.

### COUNT TEN - Participating in and Aiding & Abetting Violations of the Texas Uniform Fraudulent Transfer Act
**(Against all Defendants)**

89. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

90. As set forth above, Defendants engaged in tortious conduct against Happy Healthcare by participating in a fraudulent scheme.

91. At the time that Defendants engaged in such tortious conduct, the other Defendants had knowledge that the conduct was tortious.

92. Nevertheless, Defendants substantially assisted and encouraged each other in connection with the fraudulent scheme.

93. Defendants' assistance, encouragement, and participation were substantial factors in causing the torts committed against Happy Healthcare as described in more detail above.

94. As a result, Defendants are jointly and severally liable for all of the damages resulting from the tortious conduct.

### COUNT ELEVEN - Imposition of Constructive Trust
**(Against all Defendants)**

95. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

96. As alleged above, Defendants have committed actual fraud in concealing and dissipating funds owed to Happy Healthcare.

97. Defendants have been unjustly enriched by their wrongful acts and by the collective receipt of more than $3 million from TDEM that is owed to Happy Healthcare.

98. Happy Healthcare seeks the imposition of a constructive trust on Defendants' assets that are traceable in any way to the wrongful retention of funds and the wrongful transfers. Happy Healthcare also seeks the imposition of a constructive trust on any assets that Defendants might have conveyed to any other person who had any knowledge of the wrongful transfers.

### COUNT TWELVE – Alter Ego/Piercing the Corporate Veil
(Lassen and the OTI Entities, Serna and Serna & Associates)

99. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

100. The OTI Entities' corporate veils should be pierced to hold Lassen personally liable for the debts owed by the OTI Entities to Happy Healthcare because Lassen used the OTI Entities as a sham to perpetrate a fraud on Happy Healthcare—namely by falsely stating that OTI had not received payment from TDEM for the masks, which induced Happy Healthcare to forgo and delay instituting legal action while OTI dissipated assets, including the "loan" to Serna.

101. Serna & Associates' corporate veil should be pierced to hold Serna personally liable for the debts owed by Serna & Associates to Happy Healthcare because Serna used Serna & Associates as a sham to perpetrate a fraud on Happy Healthcare—namely, by convincing Happy Healthcare to ship millions of face masks on credit with promises that Serna & Associates and the OTI Entities would be responsible for payment, and by falsely stating that OTI had not received payment from TDEM for the masks, which induced Happy Healthcare to forgo and delay instituting legal action while OTI dissipated assets, including the "loan" to Serna.

102. This fraud was perpetrated on Happy Healthcare for, among other reasons, the personal benefit of Lassen and Serna. By falsely representing to Happy Healthcare that TDEM had not paid for the fifth purchase order, Lassen and Serna were able to buy time to drain assets and transfer those assets to Serna, other third parties, or other affiliated entities.

## VII.   DAMAGES

103. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

104. Happy Healthcare seeks all actual damages (both general and specific), direct and consequential damages caused by and arising from the Defendants' conduct as described herein including, without limitation: (1) all amounts owed under the parties' agreements; (2) pre-judgment and post-judgment interest on all amounts to the maximum permissible under law; (3) damages incurred by Happy Healthcare for loss of use of the funds; (4) lost profits; and (5) disgorgement of all amounts received by Serna from Happy Healthcare, the OTI Entities, and TDEM.

105. All Defendants are jointly and severally liable for these damages as joint tortfeasors, because all actions were aided and abetted by each other, and because the damages resulted from a civil conspiracy.

## VIII.   EXEMPLARY DAMAGES

106. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

107. Defendants' conduct was aggravated to the level of fraud, malice, or gross negligence, thereby entitling Plaintiff to exemplary damages.

## IX. CONDITIONS PRECEDENT

108. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

109. Pursuant to Federal Rule of Civil Procedure 9(c), all conditions precedent to Happy Healthcare's claims for relief have been performed or have occurred.

## X. ATTORNEY'S FEES

110. Under Federal Rule of Civil Procedure 10(c), Happy Healthcare incorporates by reference all the allegations set forth above.

111. Happy Healthcare has incurred reasonable and necessary attorney's fees as a result of the Defendants' breach of contract and duties, and by having to file this cause of action, and seeks recovery of such fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, and any and all other applicable laws.

## XI. JURY DEMAND

112. Pursuant to Federal Rule of Civil Procedure 38(b), Happy Healthcare requests a trial by jury on all issues so triable and has tendered the appropriate fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Happy Healthcare respectfully requests the following remedies individually and, in the alternative, where appropriate:

1. Damages in excess of the minimum jurisdictional limits of this Court;

2. Exemplary damages;

3. Pre-judgment interest and post-judgment interest;

4. Attorneys' fees and expenses to the extent recoverable under law;

5. All appropriate equitable relief in Happy Healthcare's favor, including without limitation disgorgement and restitution; and

6. All other and further relief in law or equity to which Happy Healthcare may otherwise be entitled.

Dated:  September 2, 2020

Respectfully submitted,

By: */s/ Jason M. Davis*
Jason M. Davis
State Bar No. 00793592
Email:  *jdavis@dslawpc.com*
Jay Hulings
State Bar No. 24104573
Email:  *jhulings@dslawpc.com*
**DAVIS & SANTOS, P.C.**
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

*Counsel for Plaintiff*
*Happy Healthcare, S.A. de C.V.*